1
2

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY ~~Petitioner~~ Petitioner
FIRST CLASS MAIL, POSTAGE PREPAID, TO ~~ALL COUNSEL~~
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: 12-4-12

DEPUTY CLERK

O

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

DEC - 4 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

3
4
5
6
7

8        UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA

10              EASTERN DIVISION

11

12  THELLAS SANDERS,                )      Case No. EDCV 12-1793-MLG
                                     )
13              Petitioner,          )      MEMORANDUM OPINION AND ORDER
                                     )      DENYING PETITION; ORDER DENYING
14         v.                        )      CERTIFICATE OF APPEALABILITY
                                     )
15  STATE OF CALIFORNIA,             )
                                     )
16              Respondent.          )
                                     )
17  ─────────────────────────────────)

18

19  I.   Background

20       A.   Procedural History

21          Petitioner was found guilty by a Riverside County Superior Court

22  jury of making criminal threats (Cal. Penal Code § 422) and

23  inflicting corporal injury upon a spouse (Cal. Penal Code §

24  273.5(a)).[1] (Lodgment 1.) The trial court found that Petitioner had

25  suffered a prior prison term (Cal. Penal Code § 667.5(b)); a prior

26  ─────────────────────

27      [1] Petitioner was also charged with possession of a firearm by a
    felon (Cal. Penal Code § 12021(a)(1)) and illegal possession of
28  ammunition (Cal. Penal Code § 12316(b)(1)). Because the jury was unable
    to reach a verdict, the trial court declared a mistrial as to these two
    counts.

1  strike conviction (Cal. Penal Code §§ 667(c)-(e)(1), 1170.12(c)(1));
2  and a prior serious felony conviction, (Cal. Penal Code § 667(a)).
3  Petitioner was sentenced to a prison term of 11 years. (Lodgment 1
4  at 163-64, 372-73, 392-93; Lodgment 2 at 717-18.)

5        On November 1, 2010, Petitioner appealed to the California Court
6  of Appeal, alleging the following claims for relief: (1) the trial
7  court erred in excluding documents that the victim (Petitioner's
8  wife) had filed in various family court proceedings, which violated
9  his constitutional right to confrontation, and (2) the trial court
10 erred in denying Petitioner's motion to dismiss a prior strike
11 conviction. (Lodgment 3.) On February 14, 2012, the court of appeal
12 affirmed the judgment in a reasoned decision on the merits. (Lodgment
13 5.) On March 29, 2012, Petitioner filed a petition for review in the
14 California Supreme Court, which was summarily denied on May 9, 2012.
15 (Lodgments 6, 7.)

16       The current petition was filed in this Court on August 13, 2012,
17 raising the same two claims for relief presented in Petitioner's
18 direct appeal. On November 16, 2012, Respondent filed an answer. On
19 November 29, 2012, Petitioner filed a reply. The matter is ready for
20 decision.[2]

21     **B.   Facts**

22       The underlying facts are taken from the unpublished opinion of
23 the California Court of Appeal. *People v. Thellas Sanders III*, No.
24 D060009 (California Court of Appeal) (Lodgment 5). Unless rebutted
25 by clear and convincing evidence, these facts are presumed correct.
26 *Tilcock v. Budge*, 538 F.3d 1138, 1141 (9th Cir. 2008), *cert. denied*,

27

28    [2] The parties have consented to the exercise of jurisdiction by the
    magistrate judge. 28 U.S.C. § 636(c). (Dkt. No. 11, 14)

1   --- U.S. ----, 129 S.Ct. 926 (2009) (citations omitted); *Diaz v.*
2   *Hedgpeth*, 2011 WL 6109619 *1 (C.D. Cal. Oct. 24, 2011); 28 U.S.C. §§
3   2254 (e)(1). In all quoted sections of this Report, the term
4   "Petitioner" is substituted for "Defendant."

5          Shikira and Petitioner began dating in November 2006. On
6   February 16, 2008, the couple got married in Las Vegas.
7   Shikira and Petitioner had an argument on the night after
8   their wedding. Petitioner punched Shikira in the stomach,
9   threw her against a wall, and choked her. Shikira and
10  Petitioner resolved their dispute and left Las Vegas together
11  the following day.

12         After the Las Vegas trip, Petitioner moved into Shikira's
13  residence in San Bernardino. Petitioner physically assaulted
14  Shikira approximately once a month during the time they were
15  living in San Bernardino. Petitioner would slap and choke
16  Shikira, causing bruises and marks on her body. Shikira would
17  conceal the injuries with clothing and makeup. In June 2008,
18  Petitioner was arrested after he threw a box of hot fried
19  chicken at Shikira and punched her in the face and chest.
20  Shikira filed for divorce in November 2008, but did not
21  complete the process. Instead, Shikira and Petitioner
22  purchased a house in Beaumont (Beaumont property or Beaumont
23  house) and moved to Beaumont in March 2009.

24         One evening in mid-April 2009, Petitioner stayed out
25  until 6:00 a.m. When he returned home, Shikira told Petitioner
26  that it was unacceptable for him to stay out so late. The
27  couple began to argue. Petitioner kicked Shikira, slapped her
28  in the face, and repeatedly punched her. Shikira, who was

approximately five months pregnant with Petitioner's child at the time, begged him to stop, and curled up in a fetal position to protect the fetus. Petitioner said, "I don't give a fuck if you are pregnant," and continued to punch Shikira in her back, sides, thighs, and arms. Shikira told Petitioner that she was going to call the police. Petitioner threatened to kill her or to have someone else kill her. Petitioner then left the house. Petitioner returned several hours later, pointed a black handgun at Shikira, and said to her, "Don't you know I will kill you? I will kill you and the kids."

In May 2009, while Petitioner was out of town, Shikira discovered a number of sexually explicit photographs. One of the photographs depicted Petitioner engaged in a sexual act with another woman and another man. Shikira called Petitioner and told him she intended to seek a divorce. After this incident, Petitioner began to make threatening telephone calls to Shikira. Shikira obtained a restraining order against Petitioner, which police served on Petitioner on May 17, 2009. In late May 2009, Shikira reported Petitioner's abuse and threats to police.[3]

(Lodgment 2 at 3-5.)

## II.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas corpus relief is available to state

---

[3] Some facts, primarily those related to the firearm and ammunition charges on which the jury did not reach a verdict, have been omitted because they are immaterial to resolution of the instant petition.

4

prisoners who are in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To establish a right to relief, a petitioner must show that the state's highest court rejected the petitioner's claim on the merits, and that this rejection was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d); *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770, 783-84 (2011). These standards apply regardless of whether the state court explained its reasons for rejecting a prisoner's claim. *Richter*, 131 S.Ct. at 784.

It is not enough that a federal court conclude "in its independent judgment" that the state court decision is incorrect or erroneous. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam)). "The state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *see also Renico v. Lett*, --- U.S. ---, 130 S.Ct. 1855, 1865 (2010). AEDPA imposes a "'highly deferential standard for evaluating state-court rulings; which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quoting *Woodford*, 537 U.S. at 24); *Vasquez v. Kirkland*, 572 F.3d 1029, 1035 (9th Cir. 2009).

Habeas corpus relief is unavailable if "fairminded jurists could disagree" about the correctness of the state court decision. *Richter*, 131 S.Ct. at 786 (quoting *Yarborough*, 541 U.S. at 664)(internal quotation marks omitted). For habeas relief to be granted, "a state

1  prisoner must show that the state court's ruling on the claim being
2  presented in federal court was so lacking in justification that there
3  was an error well understood and comprehended in existing law beyond
4  any possibility for fairminded disagreement." *Id.* at 786-87.

5      The California Supreme Court did not issue a reasoned decision
6  in this case. Therefore, this Court must "look through" that summary
7  denial to the California Court of Appeal's reasoned decision
8  affirming the judgment to determine whether the state court decision
9  is contrary to, or an unreasonable application of, clearly
10 established federal law. *See Mendez v. Knowles*, 556 F.3d 757, 767
11 (9th Cir. 2009) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04
12 (1991)).

13

14 **III. Discussion**

15      **A.    Ground One: Exclusion at Trial of Documents Related to**
16           **Family and Civil Court Proceedings**

17      In ground one, Petitioner contends that the trial court erred
18 in excluding documents that Shikira had filed in various family court
19 and civil proceedings, and improperly restricted Petitioner's cross-
20 examination of Shikira regarding these documents. Petitioner argues
21 that his due process rights and right to confrontation were violated.
22 (Pet. at 6.) However, the state courts' rejection of Petitioner's
23 claim was neither contrary to nor an unreasonable application of
24 clearly established federal law.

25      **1.    Factual Background**

26      Prior to trial, Petitioner filed a motion in limine requesting
27 that he be permitted to introduce into evidence "numerous documents"
28 that Shikira filed in various family court and civil proceedings

1   involving Petitioner, which resulted in Shikira being awarded
2   possession of the marital home in Beaumont California.[4] At a hearing
3   on the motion, the prosecutor objected, claiming that the documents
4   were confusing and not relevant. After the documents were described
5   and argument heard, the Court stated: "So if I understand you
6   correctly, your argument or your position is, then, she has fabricated
7   all of this stuff about the physical abuse and the gun because she
8   wants to get the Beaumont property in her own name." Defense counsel
9   responded, "That's correct."

10          The trial court first observed that many of the documents were
11   not necessary to establish this contention. The Court stated that
12   counsel would be permitted to ask Shikira in general terms about
13   whether she had tried to obtain title to the property in her own name.
14   However, the documents were found not to be relevant. The trial court
15   noted that the documents might become relevant for impeachment
16   purposes, but declined to decide that issue prior to trial.

17          During direct examination, the prosecutor questioned Shikira
18   about whether she would receive anything of benefit if Petitioner was
19   successfully prosecuted. She responded, "No." Shikira stated that she
20   had been awarded the Beaumont property in the parties' martial
21   dissolution proceeding and that her current testimony would not affect
22   that decision.

---

24          [4] Among the documents that the defense sought permission to
25   introduce were documents entitled: Complaint to Quiet Title, Loan
     Document Worksheet, DV-100 Request for Order, Notice of Lis Pendens,
26   Uniform Trade Certificate, Mechanic's Lien, Affidavit of Adverse Claim
     to Land and Title, Petition for Dissolution of Marriage, Petitioner's
27   Community and Quasi-Community Property Declaration, Request to Enter
     Default, Declaration for Default of Uncontested Dissolution, Notice of
28   Entry of Judgment, Judgment of Dissolution, and Marital Settlement
     Agreement/Addendum.

1    Before conducting cross-examination, defense counsel again raised
2 the question of the admissibility of the family court documents. He
3 informed the trial court that he wanted to question Shikira about
4 whether she had sought and been awarded 100% of the Beaumont property.
5 The trial court agreed to allow that questioning, but reiterated that
6 it did not want any inquiry into the reasoning or basis for the family
7 court's decision. On cross-examination, Shikira answered that she had
8 sought and received the Beaumont property in the divorce case. Shikira
9 also acknowledged participating in the signing of papers for a loan
10 application on the Beaumont property, but denied that her testimony
11 at the criminal trial benefitted her in any way.

12    In closing argument, defense counsel repeatedly argued that it
13 was reasonable to conclude that Shikira made up her trial testimony
14 in order to gain sole ownership of the home. The prosecutor's
15 objections to those arguments were overruled. However, the trial court
16 sustained an objection to defense counsel's argument that the
17 testimony showed that Shikira had financially gained from the criminal
18 prosecution, as it was not supported by the evidence. (Lodgment 5 at
19 7-14).

20         **2.   Decision of the Court of Appeal**
21    The court of appeal first rejected Petitioner's argument that
22 the trial court erred in precluding him from offering into evidence
23 the documents that showed that Shikira had requested that the family
24 court award her sole ownership of the Beaumont property. The court
25 of appeal concluded that the documents were merely cumulative of
26 Shikira's testimony on cross-examination that she had in fact
27 requested sole possession of the Beaumont property in the family
28 court proceedings, and therefore the documents were properly excluded

1    under Evidence Code section 352.[5] The court of appeal also noted that
2    the trial court allowed defense counsel to argue in closing argument
3    that Shikira had falsely accused Petitioner of the charged offenses
4    in order to obtain the Beaumont property. (Lodgment 5 at 17-18.)

5         The court of appeal also rejected Petitioner's argument that the
6    trial court erred in refusing to admit the Complaint to Quiet Title,
7    which Petitioner argued would have established that Shikira committed
8    perjury by falsely claiming that Petitioner committed fraud in
9    obtaining the loan to purchase the Beaumont property. The court of
10   appeal noted that the trial court had repeatedly stated that it would
11   allow admission of any of the documents Petitioner sought to enter
12   into evidence if necessary for impeachment purposes, but that defense
13   counsel never sought to impeach Shikira with the Complaint to Quiet
14   Title. The court of appeal also determined that, contrary to
15   Petitioner's contention, the trial court did not prevent Petitioner
16   from cross-examining Shikira regarding the alleged false statements
17   she made in the Complaint to Quiet Title; rather defense counsel
18   never specifically asked her whether she lied in the family court
19   proceedings. The court of appeal concluded that the trial court did
20   not violate Petitioner's constitutional right to confront witnesses.
21   (Lodgment 5 at 19-21.)

22        **3.   Analysis**

23        As a preliminary matter, to the extent that Petitioner contends
24   that the trial court violated California Evidence Code § 352 by
25   excluding the family and civil court documents, he has failed to

26   _____

27        [5] California Evidence Code § 352 provides, "The court in its
     discretion may exclude evidence if its probative value is substantially
     outweighed by the probability that its admission will (a) necessitate
28   undue consumption of time or (b) create substantial danger of undue
     prejudice, of confusing the issues, or of misleading the jury."

state a cognizable federal habeas claim. Federal courts may grant a writ of habeas corpus only if the petitioner's conviction or sentence is in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors in the application of state law are not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Petitioner's claim that the exclusion of the documents violated his right to present a defense under the due process clause is likewise without merit. "[T]he Constitution guarantees criminal defendants a 'meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal citations omitted). However, this right is not unlimited, and federal habeas relief is warranted only if the exclusion of favorable defense evidence rendered the trial fundamentally unfair. *Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009). When evidence is excluded on the basis of a valid application of a state evidentiary rule, such exclusion may violate due process only if the evidence is sufficiently reliable and crucial to the defense. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). In general, however, there must be "unusually compelling circumstances . . . to outweigh the strong state interest in administration of its trials." *Perry v. Rushen*, 713 F.2d 1447, 1452 (9th Cir. 1983).

Here, it cannot be said that the family and civil court documents were crucial to Petitioner's defense. The trial court reasonably found that most of these documents were irrelevant to any issue at trial and would consume too much time. The trial court did, however, repeatedly inform Petitioner that he was permitted to use any of the documents for impeachment purposes. Petitioner has failed

1    to offer any convincing argument as to how the excluded documents
2    would have been useful to his defense if introduced. Thus, there was
3    no arbitrary exclusion of material or relevant evidence.

4         Petitioner also argues that the trial court's refusal to admit
5    the documents limited Petitioner's right to impeach Shikira and
6    violated his right to confrontation. (Pet. at 6.) The Sixth Amendment
7    provides that a criminal defendant has the right to confront the
8    witnesses against him. U.S. Const. amend. VI; *Crawford v. Washington*,
9    541 U.S. 36 (2004); *Maryland v. Craig*, 497 U.S. 836, 845-46 (1990)
10   (explaining that "[t]he central concern of the Confrontation Clause
11   is to ensure the reliability of the evidence against a criminal
12   defendant by subjecting it to rigorous testing in the context of an
13   adversar[ial] proceeding before the trier of fact").

14        Petitioner's Sixth Amendment right to confrontation was not
15   violated by the trial court's exclusion of the documents Petitioner
16   sought to introduce. Although the trial court refused to admit the
17   family court documents as direct evidence, the trial court stated
18   that defense counsel could "fully" cross examine Shikira about her
19   motivation for testifying and about obtaining the Beaumont house in
20   her name. The trial court also allowed defense counsel to use any of
21   the family court documents during cross-examination to impeach
22   Shikira if she gave any statement that was contrary to or
23   inconsistent with the information contained in those documents. (1
24   Reporter's Transcript ("RT") at 37, 39-40, 43; 2 RT at 210, 213, 216,
25   221-222). However, as noted by the court of appeal, defense counsel
26   never specifically asked Shikira on cross-examination whether she had
27   lied in the family court proceedings nor sought to impeach her
28   testimony by offering into evidence any of the family court

11

1    documents. (Lodgment 5 at 18-21.) In addition, the trial court
2    allowed defense counsel to argue in closing that Shikira had lied
3    about the abuse in order to obtain the Beaumont house. (4 RT at 626,
4    627-28, 651-52.) Accordingly, the trial court did not violate
5    Petitioner's Sixth Amendment right to confrontation.

6        **B.   Ground Two: Failure to Strike Prior Conviction**

7        In California, trial courts have the discretion to dismiss prior
8    convictions that qualify as "strikes" under California's Three
9    Strikes law. *People v. Superior Court (Romero)*, 13 Cal. 4th 497, 529-
10   30 (1996); *People v. Williams*, 17 Cal.4th 148, 161 (1998); Cal. Penal
11   Code § 1385. Petitioner contends that the trial court erred in
12   denying his motion to "strike" a prior conviction pursuant to
13   California Penal Code section 1385. This claim fails to allege a
14   cognizable claim for federal habeas relief.

15       Matters relating to sentencing are generally governed by state
16   law and do not raise a federal constitutional question. *See Miller*
17   *v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989); *Middleton v.*
18   *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985); *Sturm v. California Adult*
19   *Authority*, 395 F.2d 446, 448 (9th Cir. 1967); *Jaime v. Almager*, 2009
20   WL 2390853 at *17 (C.D. Cal. 2009). Petitioner's contention that the
21   trial court improperly exercised its discretion under state
22   sentencing law does not allege a cognizable claim for federal habeas
23   corpus relief. See *Estelle*, 502 U.S. at 68; *Brown v. Mayle*, 283 F.3d
24   1019, 1040 (9th Cir. 2002), *vacated on other grounds*, 538 U.S. 901
25   (2003) (claim that trial court abused its discretion by failing to
26   strike prior conviction alleged under Three Strikes Law not
27   cognizable on federal habeas review); *Mercadel v. Trimble*, 2012 WL
28   4349313 at *8, (C.D. Cal. Aug. 29, 2012) (same); *Briones v. Sisto*,

1   2009 WL 1460826, at *6 (E.D.Cal. 2009) (same).

2        Here, Petitioner's claim for habeas relief is based on the
3   superior court's failure to exercise its discretion to strike a prior
4   conviction pursuant to California Penal Code section 1385 and *Romero*.
5   Petitioner does not present a federal constitutional question, and
6   his claim is not cognizable on federal habeas review. *Brown*, 283 F.3d
7   at 1040.

8

9   **IV.   Conclusion**

10       For the reasons discussed above, the petition for writ of habeas
11  corpus is DENIED.

12

13                      **CERTIFICATE OF APPEALABILITY**

14       A certificate of appealability will not issue. Reasonable
15  jurists would not find the denial of the petition debatable or wrong.
16  *Gonzalez v. Thayer*, 132 S.Ct. 641, 648 (2012); *Slack v. McDaniel*, 529
17  U.S. 473, 484 (2000).

18

19  Dated: December 4, 2012

20

21

22                      MARC L. GOLDMAN
                        _____
23                      Marc L. Goldman
                        United States Magistrate Judge

24

25

26

27

28

13